**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **Product Quest Manufacturing, LLC, *et al.*,[1]** | ) | **Case No. 18-50946** |
| | ) | **(Joint Administration Pending)** |
| | ) | |
| Debtors. | ) | |
| | ) | |

**DEBTORS' EMERGENCY MOTION FOR AUTHORITY TO CONTINUE
PRE-EXISTING INSURANCE PROGRAMS, TO MAINTAIN
INSURANCE PREMIUM FINANCING PROGRAMS AND TO PAY PRE-
PETITION PREMIUMS AND RELATED OBLIGATIONS**

Ei LLC (<u>EI</u>), Product Quest Manufacturing, LLC ("<u>PQM</u>"), Scherer Labs International, LLC ("<u>Scherer</u>"),  Product Quest Logistics, LLC ("<u>PQL</u>"), JBTRS, L.L.C. ("<u>JBTRS</u>"), and PQ Real Estate LLC ("<u>PQ Real Estate</u>", together with EI, PQM, Scherer, PQL, and JBTRS, collectively, the "<u>Debtors</u>") file this *Emergency Motion for Authority to Continue Pre-Existing Insurance Programs, to Maintain Insurance Premium Financing Programs, and to Pay Pre-Petition Premiums and Related Obligations* (the "<u>Motion</u>").   In support of this Motion, the Debtors respectfully represent as follows:

<u>**JURISDICTION AND VENUE**</u>

1.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this proceeding is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Ei LLC (6099); (ii) Product Quest Manufacturing, LLC (4401); (iii) Scherer Labs International, LLC (5258); (iv) Product Quest Logistics, LLC (6199); (v) JBTRS, L.L.C. (1249); and (vi) PQ Real Estate LLC (4569).  The Debtors' service address is: 2865 N. Cannon Blvd., Kannapolis, North Carolina 28083.

2.      The statutory predicates for the relief requested herein are sections 105 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

## BACKGROUND

### A.  The Debtors and these Bankruptcy Cases

3.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.

4.      On the Petition Date, each Debtor filed a substantially similar motion with this Court seeking to have its bankruptcy case jointly administered with the other Debtor's case pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

5.      The factual background relating to the Debtors' commencement of these cases is set forth in detail in the *Declaration of Michael J. Musso in Support of First Day Motions and Applications* filed on the Petition Date and incorporated herein by reference.

6.      The Debtors have continued in possession of their properties and have continued to manage their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      As of the date of this filing, no official committee of unsecured creditors has been appointed in any of these cases, and no request has been made for the appointment of a trustee or examiner.

### B.      The Debtors' Insurance Programs

8.      In connection with the operation of their businesses, the Debtors maintain various insurance policies and programs through several different insurance carriers (the "Insurance

Carriers"). All of the Debtors' insurance policies are listed on the attached Exhibit A, together with a list of the Insurance Carriers, policy terms, and the premiums due thereunder.

9.      The Debtors' insurance policies and programs include liability and property insurance policies, which provide the Debtors with insurance coverage relating to, among other things, general liability, general property, automobile liability, workers' compensation, crime, fiduciary liability and directors' and officers' liability.

10.     The Debtors are required to pay premiums based upon a fixed rate established by each Insurance Carrier. The premiums for most of these policies are determined annually and are either directly billed to the Debtors or to the Debtors' insurance broker.

11.     Prior to the Petition Date, the Debtors paid a premium for tail coverage on their directors' and officers' liability policy. As of the Petition Date, the tail policy is not yet in place.

12.     As of the Petition Date, the Debtors believe that they are either current on their insurance premiums with respect to the pre-petition period or they have paid all of the 2018 annual premiums payable under certain of their insurance policies. However, to the extent there is an outstanding insurance policy premium payable by the Debtors that relate (in whole or in part) to the pre-petition period, the Debtors seek authority to pay these pre-petition premiums in the ordinary course as such payments are necessary to keep its insurance policies and programs in force.

**C.      The Insurance Premium Financing Programs**

13.     The Debtors spend approximately $925,000 annually on insurance premiums. The Debtors are currently parties to two insurance premium financing agreements (the "Premium Financing Programs") whereby certain of the Debtors' insurance policies and programs are financed by AFCO Credit Corporation ("AFCO") and IPFS Corporation ("IPFS"). Exhibit A

indicates which of the insurance policies and programs are included in the premium financing agreements.

14.     Pursuant to the terms of the premium financing agreement with AFCO, the Debtors make a down payment contemporaneously with the execution of the Premium Financing Agreement and then makes eleven monthly installments to AFCO toward the balance of the financing over the term of the premium financing agreement.  The Debtors paid the down payment and prior to the Petition Date have paid all but three of the installment payments under the premium financing agreement with AFCO.

15.     Pursuant to the terms of the premium financing agreement with IPFS, the Debtors make a down payment contemporaneously with the execution of the Premium Financing Agreement and then make eleven monthly installments to IPFS toward the balance of the financing over the term of the premium financing agreement.

**E.      Workers' Compensation Program**

16.     Under Florida and North Carolina law, the Debtors are required to maintain workers' compensation policies and programs to provide their employees with coverage for claims arising from or related to their employment with the Debtors.  The Debtors maintain a workers' compensation policy (the "Workers' Compensation Program") with Berkley Regional Insurance Company, which covers all of the Debtors' employees.  The annual premium for the Workers' Compensation Program is $258,434.

17.     As of the Petition Date, the Debtors have paid the entire amount of the annual premium for the Workers' Compensation Program and do not believe they owe any amounts with respect to the Workers' Compensation Program.

## RELIEF REQUESTED

18.     By this Motion, the Debtors seek an order (a) authorizing them to maintain their insurance programs, insurance policies, insurance premium financing programs, workers' compensation program, and any related agreements, as such practices, programs, and policies were in effect as of the Petition Date and to pay, in their sole discretion, pre-petition amounts, if any, accrued in connection therewith, and (b) authorizing the Debtors' banks and other financial institutions to receive, process, and pay any and all checks and other transfers related to such claims.

## BASIS FOR RELIEF

19.     This Court has the authority to grant the relief requested herein pursuant to sections 105(a) and 363(b).  Section 363(b)(1) provides "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Moreover, section 105(a) allows the Court to authorize payments on account of certain pre-petition claims when necessary.  Section 105(a) provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

20.     The Debtors seek authorization to continue their insurance policies and programs, the Premium Financing Programs, and the Workers' Compensation Program (collectively, the "Insurance Programs") on an uninterrupted basis, consistent with pre-existing practices, and pay, when due, and in the ordinary course of the Debtors' businesses, all pre-petition premiums, administrative fees, and other pre-petition obligations, if any (collectively, the "Insurance Obligations") to either the insurance broker or the Insurance Carriers to the extent due and payable post-petition.

21.     As stated above, the Debtors' insurance policies involve deductible amounts for each claim that is submitted.  To the extent a deductible payment or reimbursement relating to a period prior to the Petition Date is outstanding with respect to any of the insurance policies, the Debtors seek authority, in their discretion, to make such payments in the same manner that such payments were made prior to the Petition Date.  With the exception of the claims under the Workers Compensation Program discussed below, the Debtors do not seek authority at this time to pay pre-petition claims (*e.g*., of injured parties) that fall within the deductible or self-insured retention amounts.

22.     It is essential to the Debtors' in these chapter 11 cases that the Insurance Programs be maintained on an ongoing and uninterrupted basis.  If the insurance policies are allowed to lapse, the Debtors could be exposed to substantial liability for damages resulting to persons and property of the Debtors and others.  Such exposure could have an extremely negative impact on the Debtors' ongoing business operations and would also place the Debtors' assets at risk.

23.     Continued effectiveness of directors' and officers' liability policies is necessary to the retention of qualified and dedicated senior management and directors.

24.     Finally, pursuant to the terms of many of their leases and commercial contracts, as well as the guidelines established by the U.S. Bankruptcy Administrator, the Debtors are obligated to remain current with respect to certain of their primary insurance policies.

25.     The amounts the Debtors propose to pay in respect of the Insurance Programs are minimal in light of the size of the Debtors' estates and the potential exposure of the Debtors, absent insurance coverage.  Therefore, it is critical that the Debtors continue to maintain their Insurance Programs on an uninterrupted basis and be permitted to pay any obligations in the

ordinary course of business and consistent with pre-petition practices.  Relief similar to that requested herein has been granted by courts in other substantial chapter 11 cases.  *See, e.g.*, *In re Maguire Group Holdings, Inc., et al.*, Case No. 11-39347-BKC-RAM (Bankr. S.D. Fla. Nov. 30, 2011) (Mark, J.); *In re Foamex Int'l. Inc.*, Case No. 05-12685 (Bankr. D. Del. Sept. 21, 2005) (Walsh, J.) [Docket No. 41]; *In re Allied Holdings, Inc.*, Case Nos. 05-12515–05-12537 (Bankr. N.D. Ga. Aug. 1, 2005) (Drake, J.) [Docket Nos. 56 and 62]; *In re Centennial HealthCare Corporation*, Case No. 02-74974 (Bankr. N.D. Ga. Dec. 20, 2002) (Massey, J.) [Docket No. 48]. Given the crucial nature of the Debtors' various insurance coverage, the Debtors submit that similar relief is appropriate in these chapter 11 cases.

26.     The maintenance of the Workers' Compensation Program is likewise justified because applicable state law mandates this coverage, and 28 U.S.C. § 959(b) requires the Debtors to comply with valid state laws.  In addition, the Debtors' employees all depend on the protection that the Workers' Compensation Program provides.

27.     As of the Petition Date, certain claims remained pending against the Debtors under the Workers' Compensation Program (the "Workers' Compensation Claims") arising out of employee accidents on the job.  Accordingly, the Debtors request authority to pay any and all amounts due and owing with respect to the Workers' Compensation Programs, and to maintain and continue pre-petition practices with respect to the Workers' Compensation Programs, including, among other things, allowing workers' compensation claimants—to the extent they have valid Workers' Compensation Claims—to proceed with their claims under the applicable insurance policy or program.

28.     Authorization of the payment of the Insurance Obligations should not be deemed to constitute the post-petition assumption of any executory contract pursuant to section 365 of

the Bankruptcy Code.  The Debtors are in the process of reviewing these matters and reserve all of their rights under the Bankruptcy Code with respect thereto.  Moreover, authorization to pay the Insurance Obligations should not affect the Debtors' rights to contest the amount or validity of any such charges, in whole or in part.

29.     If the Court grants the relief sought herein, the Debtors request that the Debtors' depository bank be authorized when requested by the Debtors and in the Debtors' sole discretion, without any duty of inquiry or liability to any party for following the Debtors' instructions, to receive, process, honor, and pay any and all checks drawn on the Debtors' accounts to pay the Insurance Obligations, whether those checks were presented prior to or after the Petition Date, and make other transfers provided that sufficient funds are available in the applicable accounts to make the payments.

30.     Based on the foregoing, the Debtors submit the relief requested is necessary and appropriate, is in the best interests of their estates and their creditors, and should be granted in all respects.

31.     The Debtors submit that the facts cited herein and the First Day Declaration, filed contemporaneously herewith, illustrate that the relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates.  Based on the foregoing, Bankruptcy Rule 6003, to the extent it is applicable, has been satisfied.

32.     To the extent the fourteen day stay of Bankruptcy Rule 6004(h) may be construed to apply to the subject matter of this Motion, the Debtors request that such stay be waived.

## **NOTICE**

33.     Notice of this Motion has been provided to the Office of the U.S. Bankruptcy Administrator, counsel for the Debtors' pre-petition secured lenders, Bank of America, N.A., the

Internal Revenue Service, the Debtors' thirty (30) largest unsecured creditors on a consolidated basis, and the Insurance Carriers.  In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that this Court:

      (a)     enter an order in the form attached hereto as <u>Exhibit B</u>; and

      (b)     grant the Debtors such other and further relief as is just and proper.

      [*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*]

Dated: September 7, 2018                Respectfully submitted,

NORTHEN BLUE LLP

/s/ John A. Northen
John A. Northen
North Carolina State Bar No. 6789
jan@nbfirm.com
Vicki L. Parrott
North Carolina State Bar No. 25449
vlp@nbfirm.com
John Paul H. Cournoyer
North Carolina State Bar No. 42224
jpc@nbfirm.com
1414 Raleigh Road, Suite 435
Chapel Hill, North Carolina  27517
Telephone:  (919) 968-4441

PROPOSED COUNSEL FOR THE
DEBTORS-IN-POSSESSION

## **EXHIBIT A**

**List of Debtors' Insurance Programs**

| Covered Entity | Billed By | Carrier | Policy | Policy # | Premium | Start | End | Financed |
|---|---|---|---|---|---|---|---|---|
| PQM | Old Dominion Insurance Company | Old Dominion Insurance Company | Flood Building -540 Carswell | 1478843831 | $1,061* | 11/19/2017 | 11/19/2018 | No |
| PQM | Old Dominion Insurance Company | Old Dominion Insurance Company | Flood Contents 540 Carswell | 1478850346 | $980* | 8/9/2017 | 8/8/2018 | No |
| JBTRS | Wright National Flood Insurance | Wright National Flood Insurance | Flood Building 330 Carswell | 09 1150350198 | $1,347* | 5/9/2018 | 5/9/2019 | No |
| PQ Real Estate | Old Dominion Insurance Company | Old Dominion Insurance Company | Flood Bldg & Content 343 | 1478846230 | $1,510* | 10/17/2017 | 10/17/2018 | No |
| PQM & JBTRS | Wright National Flood Insurance | Wright National Flood Insurance | Flood Building - 330 Carswell | 09 1150186377 | $1,894* | 11/4/2017 | 11/4/2018 | No |
| PQM | Wright National Flood Insurance | Wright National Flood Insurance | Flood Contents 330 Carswell | 09 1150039153 | $7,437* | 8/17/2017 | 8/16/2018 | No |
| PQM | Willis | Navigators | Environmental Pollution | CH18ESP0BI1HMNC | $6,846 * | 2/5/2018 | 2/5/2019 | No |
| PQM & EI | Willis/AFCO | Beazley | Property | W19803170301 | $185,496 | 12/1/2017 | 12/1/2018 | Yes - AFCO |
| PQM & EI | Willis/AFCO | Homeland | Excess Property | 795006944 | $26,503 | 12/1/2017 | 12/1/2018 | Yes - AFCO |
| PQM & EI | Willis/AFCO | Scottsdale | Excess Property | AJS0000638 | $43,251 | 12/1/2017 | 12/1/2018 | Yes - AFCO |
| PQM & EI | Willis/AFCO | Evanston | Excess Property | 3654527-1-1 | $39,505 | 12/1/2017 | 12/1/2018 | Yes - AFCO |
| PQM & EI | Willis/AFCO | XL Insurance | Equipment | US00072720PR17A | $12,610 | 12/1/2017 | 12/1/2018 | Yes - AFCO |

| Covered Entity | Billed By | Carrier | Policy | Policy # | Premium | Start | End | Financed |
|---|---|---|---|---|---|---|---|---|
| PQM & EI | Willis/AFCO | | Document Fee for Financing Arrangement with AFCO | | $985 | 12/1/2017 | 12/1/2018 | Yes - AFCO |
| PQM & EI | Willis | National Union Fire | Crime | 01-932-23-88 | $4,694 * | 12/1/2017 | 12/1/2018 | No |
| PQM | Willis/IPFS | Berkley | Auto | LCA 5038780-10 | $14,259 | 4/1/2018 | 4/1/2019 | Yes - IPFS |
| PQM | Willis/IPFS | Travelers | Umbrella | ZUP-15S83400-18-N | $39,300 | 4/1/2018 | 12/23/2018 | Yes - IPFS |
| PQM | Willis/IPFS | Arch | General Liability | BHCGL0012413 | $57,876 | 4/1/2018 | 12/23/2018 | Yes - IPFS |
| PQM & EI | Willis | AIG | D & O | 03-571-36-67 | $48,215* | 11/4/2017 | 11/7/2018 | No |
| PQM & EI | Willis | AIG | Chubb D&O Extenion | G28190906 001 | $44,232 | 6/1/2018 | 6/1/2024 | No |
| PQM & EI | Willis | AIG | Excess D&O | MPL 1070098-00 | $18,000 | 6/1/2018 | 6/1/2024 | No |
| PQM & EI | Willis | Berkley | Workers Comp | LWC5036553-2 | $258,434* | 12/23/2017 | 12/23/2018 | No |
| EI | Willis | Berkley | Auto | LCA 5036556-11 | $5,108* | 12/23/2017 | 12/23/2018 | No |
| EI | Willis | Gemini | Product Liability | GL_14725-2 | $87,869* | 12/23/2017 | 12/23/2018 | No |
| EI | Willis | Star Net | Liability | LNP 5036607-11 | $19,873* | 12/23/2017 | 12/23/2018 | No |

**\*2018 annual premiums have been paid in full.**

**EXHIBIT B**

**Proposed Order**

THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Product Quest Manufacturing, LLC, *et al.*,[1] | ) | Case No. 18-50946 |
| | ) | (Joint Administration Pending) |
| | ) | |
| Debtors. | ) | |
| | ) | |

ORDER AUTHORIZING DEBTORS TO CONTINUE PRE-EXISTING
INSURANCE PROGRAMS, TO MAINTAIN INSURANCE PREMIUM
FINANCING PROGRAMS AND TO PAY PRE-PETITION PREMIUMS
AND RELATED OBLIGATIONS

This Matter is before the Court on the *Emergency Motion for Authority to Continue Pre-Existing Insurance Programs, to Maintain Insurance Premium Financing Programs, and to Pay Pre-Petition Premiums and Related Obligations* (the "Motion") of Ei LLC ("EI"), Product Quest Manufacturing, LLC ("PQM"), Scherer Labs International, LLC ("Scherer"), Product Quest Logistics, LLC ("PQL"), JBTRS, L.L.C. ("JBTRS"), and PQ Real Estate LLC ("PQ Real

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Ei LLC (6099); (ii) Product Quest Manufacturing, LLC (4401); (iii) Scherer Labs International, LLC (5258); (iv) Product Quest Logistics, LLC (6199); (v) JBTRS, L.L.C. (1249); and (vi) PQ Real Estate LLC (4569).  The Debtors' service address is: 2865 N. Cannon Blvd., Kannapolis, North Carolina 28083.

2

Estate", together with EI, PQM, Scherer, PQL, and JBTRS, collectively, the "Debtors").  All capitalized terms used but not defined herein shall have the meanings given to them in the Motion.

The Court has considered the Motion, the *Declaration of Michael J. Musso in Support of First Day Motions and Applications*, and the matters reflected in the record of the hearing held on the Motion on September ___, 2018.  It appears that the Court has jurisdiction over this proceeding; that this is a core proceeding; that notice of the Motion has been given to the Office of the U.S. Bankruptcy Administrator, counsel for the Debtors' pre-petition secured lenders, Bank of America, N.A., the Internal Revenue Service, the Debtors' thirty (30) largest unsecured creditors on a consolidated basis, and the Insurance Carriers; that the relief sought in the Motion is in the best interests of the Debtors, their estates, and their creditors; and that good and sufficient cause exists for such relief.

Accordingly, it is hereby ORDERED as follows:

1.      The Motion is GRANTED.

2.      The Debtors are authorized, but not directed, to pay premiums and other amounts necessary to maintain the Insurance Programs.

3.      The Debtors' depository bank is authorized and directed to honor any check or draft made in connection with the Insurance Programs that may be presented for payment and to make other transfers necessary to implement these transactions, provided that sufficient funds are available in the applicable accounts to make the payments and transfers.  The Debtors are further authorized to pay any cost or penalty incurred in the event that a check issued by the Debtors for payment of an Insurance Program obligation is inadvertently not honored because of the filing of the Debtors' bankruptcy cases.

4.      The banks and other financial institutions that process, honor, and pay any and all checks on account of the Insurance Program obligations shall rely on the representations of the Debtors as to which checks are issued and authorized to be paid in accordance with this Order without any duty of further inquiry and without liability for following the Debtors' instructions.

5.      Neither this Order, nor the Debtors' payment of any amounts authorized by this Order, shall (i) result in any assumption of any executory contract by the Debtors; (ii) result in a commitment to continue any plan, program, or policy of the Debtors; or (iii) impose any administrative, pre-petition, or post-petition liabilities upon the Debtors.

6.      Any and all payments arising under or in connection with or authorized to be made by this Order, or otherwise relating to the relief requested in the Motion, shall be subject to the interim and final orders of this Court in these chapter 11 cases approving the Debtors' use of cash collateral (including all budgets referenced therein).

7.      To the extent the fourteen day stay of Bankruptcy Rule 6004(h) may be construed to apply to the subject matter of this Order, such stay is hereby waived.

8.      The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

9.      Counsel for the Debtors is directed to serve a copy of this Order on all parties on the Master Service List and the Insurance Carriers within three (3) days of the entry of this Order and file a certificate of service with the Clerk of the Court.

[END OF DOCUMENT]