## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **Product Quest Manufacturing, LLC, *et al.*,[1]** | ) | **Case No. 18-50946** |
| | ) | **(Joint Administration Pending)** |
| | ) | |
| Debtors. | ) | |
| | ) | |

### DEBTORS' EMERGENCY MOTION FOR AUTHORITY TO (A) MAINTAIN EXISTING BANK ACCOUNTS AND CONTINUE USE OF EXISTING CASH MANAGEMENT SYSTEM, (B) CONTINUE USE OF EXISTING BUSINESS FORMS, AND (C) CONTINUE EXISTING INVESTMENT PRACTICES

Ei LLC (EI), Product Quest Manufacturing, LLC ("PQM"), Scherer Labs International, LLC ("Scherer"), Product Quest Logistics, LLC ("PQL"), JBTRS, L.L.C. ("JBTRS"), and PQ Real Estate LLC ("PQ Real Estate", together with EI, PQM, Scherer, PQL, and JBTRS, collectively, the "Debtors") file this *Emergency Motion For Authority to (A) Maintain Existing Bank Accounts and Continue Use of Existing Cash Management System, (B) Continue Use of Existing Business Forms, and (C) Continue Existing Investment Practices* (the "Motion"). In support of this Motion, the Debtors respectfully represent as follows:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this proceeding is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Ei LLC (6099); (ii) Product Quest Manufacturing, LLC (4401); (iii) Scherer Labs International, LLC (5258); (iv) Product Quest Logistics, LLC (6199); (v) JBTRS, L.L.C. (1249); and (vi) PQ Real Estate LLC (4569). The Debtors' service address is: 2865 N. Cannon Blvd., Kannapolis, North Carolina 28083.

2.      The statutory predicates for the relief requested herein are sections 105, 345, 1107 and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure.  The Debtors ask that this Motion be heard at the same time as the other first day pleadings filed contemporaneously herewith.

## BACKGROUND

3.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.

4.      On the Petition Date, each Debtor filed a substantially similar motion with this Court seeking to have its bankruptcy case jointly administered with the other Debtors' cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

5.      The factual background relating to the Debtors' commencement of these cases is set forth in detail in the *Declaration of Michael J. Musso in Support of First Day Motions and Applications* filed on the Petition Date and incorporated herein by reference.

6.      The Debtors have continued in possession of their properties and have continued to manage their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      As of the date of this filing, no official committee of unsecured creditors has been appointed in any of these cases, and no request has been made for the appointment of a trustee or examiner.

## RELIEF REQUESTED

8.      By this Motion, the Debtors seek an order pursuant to sections 105 and 345 of the Bankruptcy Code authorizing them to (a) maintain their existing bank accounts and continue the use of their existing cash management system, (b) continue the use of their existing business forms, and (c) continue their existing investment practices.

9.      In order to supervise the administration of chapter 11 cases, this Court's local rules and the U.S. Bankruptcy Administrator have established certain operating guidelines for debtors-in-possession that operate their businesses.  These guidelines require chapter 11 debtors, among other things, (i) to close all existing bank accounts and open new debtor-in-possession bank accounts, and (ii) to obtain business forms, including checks, that bear the designation "debtor-in-possession," the bankruptcy case number, and the type of account for each debtor-in-possession account.  These requirements are designed to provide a clear line of demarcation between pre-petition and post-petition transactions and operations and to prevent the inadvertent post-petition payment of pre-petition claims through the payment of checks drawn prior to the filing of the bankruptcy petition.

10.      As more fully set forth below, to avoid disruption of the day-to-day operations of the Debtors and to ensure an orderly transition into chapter 11, the Debtors respectfully request an order: (a) authorizing them to continue to maintain their existing bank accounts and to continue use of their existing cash management system; and (b) authorizing them to continue to utilize their existing business forms, including checks. Finally, the Debtors seek a waiver of the deposit guidelines set forth in section 345(b) to the extent necessary to allow the Debtors to maintain their bank accounts.

## BASIS FOR RELIEF

**A.    Continued Use of Existing Bank Accounts, Cash Management System, and Existing Business Forms**

11.    As described in greater detail in the First Day Declaration, the Debtors' operations are divided into two geographic and corporate segments: (i) the manufacturing facility and related assets in Florida (the "Florida Segment") and (ii) the manufacturing facility and related assets in North Carolina (the "North Carolina Segment").  The Florida Segment and the North Carolina Segment provide manufacturing services to a handful of "cross-over" clients. The Segments also share coverage under a number of Debtor insurance policies and prior to the Petition Date, certain Debtor employees worked for both the Florida and North Carolina Segments.  The Debtors use a consolidated cash management system, which is described on Exhibit A-1.  Importantly, each and every deposit, payment and other transfer made pursuant to the Debtors' cash management practices is documented and accounted for on a per Segment basis.  The existing cash management practices are integral to the stability and efficiency of the Debtors' operations, as they ensure Debtor receivables are easily collected and the Debtors' operating expenses are timely satisfied in a way that minimizes the Debtors' administrative costs. The loss or even interruption of the cash management practices would be detrimental to the Debtors.

12.    As described more fully below, prior to the commencement of these chapter 11 cases, the Debtors maintained seven bank accounts at one bank, a schedule of which is attached hereto as Exhibit A-2.  The Debtors' primary cash management bank is Bank of America, N.A. ("BoA").  The Debtors maintain all of their accounts with BoA through which substantially all of their collections are deposited and disbursements are made.  The Debtors' cash management system operates as follows:

4

(a) The Debtors collect receipts primarily through (1) wires and ACH's deposited into a BoA operating master account (the "Operating Master Account"); (2) checks received at their facility in Florida; and (3) checks received at their facility in North Carolina.   The Debtors' incoming receipts are all deposited into the Operating Master Account. The Operating Master Account is subject to a deposit account control agreement, dated as of November 6, 2015, among Product Quest Manufacturing, LLC, and Madison Capital Funding LLC, as administrative agent on behalf of itself and certain lenders and Bank of America, N.A.  (the "Operating Account Control Agreement").   The Operating Account Control Agreement permits the Company to freely access the funds in this account until the Agent notifies BoA otherwise.

(b) The Operating Master Account funds three disbursement accounts: a payroll account shared by the Debtors (the "Payroll Account") and two general disbursements accounts – one for PQM (the "PQM Disbursement Account") and one for EI (the "EI Disbursement Account", together with the PQM Disbursement Account, the "Disbursement Accounts").   As needed, Bank of America transfers funds from the Operating Master Account to the Payroll Account and the Disbursements Accounts to cover expected presentments.   At all times, the Payroll Account and the Disbursement Account maintain a zero balance.

(c) In addition to the three accounts described above, the Debtors maintain three inactive accounts with BoA.  Two of the accounts have not been used by the Debtors in the past twelve months and one account, the Debtors' petty cash account (Acct. No. 487001618920), has not been used in the past two months and holds a small balance.

13.     Authorizing the Debtors to continue to use their existing bank accounts is essential to a smooth and orderly transition of the Debtors into chapter 11.  Moreover, having to open new accounts as of the Petition Date would unnecessarily distract the Debtors' key accounting and financial personnel.

14.     By permitting existing accounts to remain open, preserving continuity, and avoiding the operational and administrative paralysis that closing the accounts and opening new ones would necessarily entail, all parties-in-interest will be best served, and the Debtors' estates will benefit considerably.

15.     Finally, by virtue of the nature and scope of the Debtors' businesses, the number of accounts, and the number of employees, suppliers of goods and services, and others with whom the Debtors transact business, it is imperative that the Debtors be permitted to continue to use their existing business forms, including checks.  A substantial amount of time and expense would be required to print new business forms and stationery and would also likely result in a substantial risk of disruption to the Debtors.

16.     Relief similar to that requested herein has been granted by courts in other substantial chapter 11 cases.  *See, e.g.*, *In re Foamex Int'l. Inc.*, Case No. 05-12685 (Bankr. D. Del. Sept. 21, 2005) (Walsh, J.); *In re Meridian Auto. Systems-Composites Ops., Inc.*, No. 05-11168 (Bankr. D. Del. Apr. 27, 2005) (Walrath, J.); *In re SHC, Inc.*, Case No. 03-12002 (Bankr. D. Del. July 2, 2003) (MFW); *In re Grant Broad., Inc.*, 75 B.R. 819, 820 (E.D. Pa. 1987) (referring to order authorizing use of cash collateral and pre-petition bank accounts); *In re New York City Shoes, Inc.*, 78 B.R. 426, 427 (Bankr. E.D. Pa. 1987) (debtor depositing post-petition funds into pre-petition bank accounts).

17.     Because of the severe disruption to the Debtors' cash management system that would result if the Debtors were forced to open new accounts, the Debtors believe it is extremely important that this Court grant their request for maintaining their existing bank accounts and business forms.  The Debtors also ask for authorization to open, when necessary, additional FDIC-insured bank accounts that will be subject to the requirements of this Order.

**B.     Continued Use of Investment Practices**

18.     The Debtors also seek a waiver of the deposit guidelines set forth in section 345(b) to the extent necessary to allow the Debtors to maintain their bank accounts.

19.     Section 345 of the Bankruptcy Code authorizes a debtor to invest cash and money in a manner that will "yield the maximum reasonable net return on such money, taking into

6

account the safety of such deposit or investment." 11 U.S.C. § 345(a).  Section 345(b) of the

Bankruptcy Code provides as follows:

> Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States, the trustee shall require from an entity with which such money is deposited or invested—
>> (1) a bond—
>>> (A) in favor of the United States;
>>> (B) secured by the undertaking of a corporate surety approved by the United States trustee for the district in which the case is pending; and
>>> (C) conditioned on—
>>>> (i) a proper accounting for all money so deposited or invested and for any return on such money;
>>>> (ii) prompt repayment of such money and return; and
>>>> (iii) faithful performance of duties as a depository; or
>> (2) the deposit of securities of the kind specified in section 9303 of title 31; unless the court for cause orders otherwise.

11 U.S.C. § 345(b).

20.     Section 345 expressly provides that the Court may modify a debtor's investment

requirements for "cause."  The Debtors submit that cause exists for allowing them to invest their

excess cash in accordance with their existing investment policies, without meeting the strict bond

requirements of section 345(b).

21.     The Debtors submit that their practices generally conform with the intent of

section 345(b) to protect and maximize the value of their estates.  The Debtors believe that their

existing investment procedures are designed to protect the principal invested while maximizing

liquidity and, therefore, believe that sufficient cause exists to waive the investment requirements

of section 345(b) to allow the Debtors to continue their existing investment procedures.

22.     Courts have routinely granted requests to approve the continued use of deposit

guidelines that do not comply strictly with section 345.  This is especially the case when, as here,

the manner of the proposed investments is safe and prudent.  *See, e.g.*, *In re Service Merchandise*

*Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999) (enumerating factors to be considered in waiving requirements of section 345, including size of business and safety of debtor's proposed investments).

23.     Moreover, the Debtors believe that the bank the Debtors use is well-established and invests the Debtors' funds in accordance with their standard investment guidelines. Requiring the Debtors to open multiple accounts at different banks so that the deposits in each such bank would be insured by FDIC would be unnecessarily burdensome and would lead to the same delays and disruption to the Debtors' businesses that this Motion seeks to avoid.

24.     The Debtors submit that given the totality of the circumstances, their request is reasonable and cause exists for the Court to waive the requirements of section 345(b).

25.     For the foregoing reasons, the Debtors believe that granting the relief requested herein is appropriate and in the best interest of their estates.

26.     To the extent the fourteen day stay of Bankruptcy Rule 6004(h) may be construed to apply to the subject matter of this Motion, the Debtors request that such stay be waived.

## NOTICE

27.     Notice of this Motion has been provided to the Office of the U.S. Bankruptcy Administrator, counsel for the Debtors' pre-petition secured lenders, Bank of America, N.A., the Internal Revenue Service, and the Debtors' thirty (30) largest unsecured creditors on a consolidated basis.  In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that this Court:

(a)     enter an order in the form attached hereto as Exhibit B authorizing the Debtors to maintain their existing bank accounts and continue use of their existing cash management system, continue the use of their existing business forms, and continue their existing investment practices; and

(b)     grant the Debtors such other and further relief as is just and proper.

[*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*]

Dated: September 7, 2018          Respectfully submitted,

NORTHEN BLUE LLP

/s/ John A. Northen
John A. Northen
North Carolina State Bar No. 6789
jan@nbfirm.com
Vicki L. Parrott
North Carolina State Bar No. 25449
vlp@nbfirm.com
John Paul H. Cournoyer
North Carolina State Bar No. 42224
jpc@nbfirm.com
1414 Raleigh Road, Suite 435
Chapel Hill, North Carolina  27517
Telephone:  (919) 968-4441

PROPOSED COUNSEL FOR THE
DEBTORS-IN-POSSESSION

## **EXHIBIT A-1**

**Company Bank Accounts Cash Flow Diagram**



**Product Quest Cash Accounts**

**A:**
Receives virtually all cash either by checks deposited electronically at each location (FL and NC) or wires/ach directly into
Main repository of cash
**B & C:**
Clear checks, outgoing ACH/Wires
ZBA accounts, Zero balance at end of each day
**D:**
Outgoing wire for PQM (Florida) and EI (North Carolina)
Auto drafts from Paychex for payroll tax liabilities
Clearing for manual payroll checks issued (typically replacements)
**E, F, & G:**
Not ZBA's
Can be closed

2

## **EXHIBIT A-2**

**Schedule of Bank Accounts**

| ACCOUNT HOLDER | ACCOUNT NAME | ACCOUNT NUMBER | TYPE OF ACCOUNT |
|---|---|---|---|
| Bank of America | Product Quest Manufacturing LLC – Depository Account Ei LLC Account | 487004335747 | Deposit |
| Bank of America | Product Quest Manufacturing LLC | 487001618917 | Disbursement |
| Bank of America | Ei LLC | 487004170973 | Disbursement |
| Bank of America | Product Quest Manufacturing LLC Payroll Account | 487001618933 | ZBA - Payroll |
| Bank of America | Product Quest Manufacturing LLC Petty Cash | 487001618920 | Inactive |
| Bank of America | Product Quest Manufacturing LLC DBA Skin Beautifying Research Labs | 487004173190 | Inactive |
| Bank of America | Scherer Labs International LLC DBA SL Labs | 487004173200 | Inactive |

## **EXHIBIT B**

**Proposed Order**

**THE UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**WINSTON-SALEM DIVISION**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **Product Quest Manufacturing, LLC, *et al.*,[1]** | ) | **Case No. 18-50946** |
| | ) | **(Joint Administration Pending)** |
| | ) | |
| Debtors. | ) | |
| | ) | |

**ORDER AUTHORIZING DEBTORS TO (A) MAINTAIN  EXISTING BANK
ACCOUNTS AND CONTINUE USE OF EXISTING CASH MANAGEMENT SYSTEM,
(B) CONTINUE USE OF EXISTING BUSINESS FORMS, AND (C) CONTINUE
EXISTING INVESTMENT PRACTICES**

This matter is before the Court on the *Expedited Motion For Authority to (A) Maintain*

*Existing Bank Accounts and Continue Use of Existing Cash Management System, (B) Continue*

*Use of Existing Business Forms, and (C) Continue Existing Investment Practices* (the "Motion")

of Ei LLC ("EI"), Product Quest Manufacturing, LLC ("PQM"), Scherer Labs International,

LLC ("Scherer"),  Product Quest Logistics, LLC ("PQL"), JBTRS, L.L.C. ("JBTRS"), and PQ

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Ei LLC (6099); (ii) Product Quest Manufacturing, LLC (4401); (iii) Scherer Labs International, LLC (5258); (iv) Product Quest Logistics, LLC (6199); (v) JBTRS, L.L.C. (1249); and (vi) PQ Real Estate LLC (4569).  The Debtors' service address is: 2865 N. Cannon Blvd., Kannapolis, North Carolina 28083.

Real Estate LLC ("PQ Real Estate", together with EI, PQM, Scherer, PQL, and JBTRS, collectively, the "Debtors").  All capitalized terms used but not defined herein shall have the meanings given to them in the Motion.

The Court has considered the Motion, the *Declaration of Michael M. Musso in Support of First Day Applications and Motions*, and the matters reflected in the record of the hearing held on the Motion on September ___, 2018.  It appears that the Court has jurisdiction over this proceeding; that this is a core proceeding; that notice of the Motion has been given to the Office of the United States Bankruptcy Administrator, counsel for the Debtors' pre-petition secured lenders, counsel to the Debtors' proposed debtor-in-possession lender, the Internal Revenue Service, the Debtors' thirty (30) largest unsecured creditors on a consolidated basis, and Bank of America, N.A.; that no further notice is necessary; that the relief sought in the Motion is in the best interests of the Debtors, their estates, and their creditors; and that good and sufficient cause exists for such relief.

Accordingly, it is hereby ORDERED as follows:

1.      The Motion is GRANTED.

2.      The Debtors are authorized to: (a) designate, maintain, and continue to use any and all existing bank accounts with the same account numbers, including, without limitation, the accounts identified in Exhibit A to the Motion; (b) treat the bank accounts for all purposes as accounts of the Debtors as debtors-in-possession; and (c) continue to use their existing cash management system.

3.      Bank of America, N.A. (the "Bank") is authorized to continue to service and administer the applicable bank accounts as accounts of the Debtors as debtors-in-possession without interruption and in the usual and ordinary course, and to receive, process, honor, and pay

2

any and all checks, drafts, wires, or automated clearinghouse transfers ("ACH Transfers") drawn on the bank accounts after the Petition Date by holders or makers thereof, as the case may be.  In the course of providing cash management services to the Debtors, the Bank is authorized, without further order of this Court, to deduct from the appropriate accounts of the Debtors their customary fees and expenses associated with the nature of the deposit and cash management services rendered to the Debtors, whether arising pre-petition or post-petition, and further, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, regardless of whether such items were deposited pre-petition or post-petition and regardless of whether the returned items related to pre-petition or post-petition items; *provided*, *however,* that, in addition to the requirements thereof, any checks, drafts, wires, or ACH Transfers drawn or issued by the Debtors before the Petition Date shall be timely honored by the Bank to the extent necessary to comply with any order of this Court authorizing payment of certain pre-petition claims, subject to the availability of funds, unless the Bank is instructed by the Debtors to stop payment on or otherwise dishonor such check, draft, wire, or ACH Transfer.

4.     Notwithstanding anything to the contrary in any other order in this case entered contemporaneously with this Order, the Bank: (a) is authorized to accept and honor all representations from the Debtors as to which checks, drafts, wires, or ACH Transfers should be honored or dishonored consistent with any order(s) of this Court, whether the checks, drafts, wires, or ACH Transfers are dated prior to, on, or subsequent to the Petition Date and whether or not the Bank believes the payment is or is not authorized by any order(s) of the Court; (b) has no duty to inquire as to whether such payments are authorized by any order(s) of the Court; and (c) has no liability to any party on account of the Debtors' instructions in accordance with this

Order or for honoring a pre-petition check or other item as the result of an innocent mistake made despite implementation of customary item handling procedures.

5.      Nothing contained herein shall prevent the Debtors from opening any additional bank accounts or closing any existing bank account(s) as it may deem necessary and appropriate, and the Bank is authorized to honor the Debtors' request to open or close, as the case may be, such bank accounts or additional bank accounts; *provided*, *however,* that any new account shall be with a bank that is insured with the Federal Deposit Insurance Corporation and that is organized under the laws of the United States or any State thereof.

6.      Any and all accounts opened by the Debtors on or after the Petition Date at any Bank shall, for all purposes under this Order, similarly be subject to the rights and obligations of this Order.

7.      The Debtors and the Bank are hereby authorized to continue to perform pursuant to the terms of any pre-petition agreements that may exist between them, except and to the extent otherwise directed by the terms of this Order.  The parties to such agreements shall continue to enjoy the rights and remedies afforded to them under such agreements, except to the extent modified by the terms of this Order or by operation of the Bankruptcy Code.

8.      The Debtors are authorized to continue to use their existing business forms and stationery without alteration or change.

9.      The Debtors are authorized to continue their current investment practices as described in the Motion.  The Debtors are not required to obtain a bond from the Bank pursuant to section 345(b) of the Bankruptcy Code.

10.      Neither this Order, nor the Debtors' payment of any amounts authorized by this Order, shall: (i) result in any assumption of any executory contract by the Debtors; (ii) result in a

4

commitment to continue any plan, program, or policy of the Debtors; or (iii) impose any administrative, pre-petition, or post-petition liabilities upon the Debtors.

11.     To the extent the fourteen day stay of Bankruptcy Rule 6004(h) may be construed to apply to the subject matter of this Order, such stay is hereby waived.

12.     The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

13.     Counsel for the Debtors is directed to serve a copy of this Order on all parties on the Master Service List and the Bank within three (3) days of the entry of this Order and to file a certificate of service with the Clerk of the Court.

[END OF DOCUMENT]