**THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **Product Quest Manufacturing, LLC,** *et al.,*[1] | ) | **Case No. 18-50946** |
| | ) | **(Joint Administration Pending)** |
| | ) | |
| **Debtors.** | ) | |
| | ) | |

**DEBTORS' EMERGENCY MOTION
FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING THE
DEBTORS TO USE CASH COLLATERAL PURSUANT TO SECTION 363 OF THE
BANKRUPTCY CODE, (B) GRANTING ADEQUATE PROTECTION PURSUANT
TO SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE, (C) MODIFYING THE
AUTOMATIC STAY, AND (D) SCHEDULING A FINAL HEARING PURSUANT TO
BANKRUPTCY RULE 4001(C)**

The above-captioned debtors and debtors in possession (collective, the "Debtors"), file this *Emergency Motion for Entry of an Interim and Final Order (A) Authorizing the Debtors to use Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (B) Granting Adequate Protection to Pursuant to Sections 361 and 363 of the Bankruptcy Code, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing Pursuant to Rule 4001(c) of the Federal Rules of Bankruptcy Procedures* (the "Motion"). In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Ei LLC (6099); (ii) Product Quest Manufacturing, LLC (4401); (iii) Scherer Labs International, LLC (5258); (iv) Product Quest Logistics, LLC (6199); (v) JBTRS, L.L.C. (1249); and (vi) PQ Real Estate LLC (4569). The Debtors' service address is: 2865 N. Cannon Blvd., Kannapolis, North Carolina 28083.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of this proceeding is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The predicates for the relief requested herein are sections 105, 361 and 363 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rule 4001(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

3.      On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of North Carolina (the "Court").  The Debtors have continued in possession of their properties and have continued to manage their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No request has been made for the appointment of a trustee or examiner, and no official committee has yet been established in these cases.

4.      On the Petition Date, each Debtor filed a substantially similar motion with this Court seeking to have its bankruptcy case jointly administered with the other Debtors' cases pursuant to Bankruptcy Rule 1015(b).

5.      The factual background relating to the Debtors' commencement of these cases is set forth in detail in the *Declaration of Michael J. Musso in Support of First Day Motions and Applications* (the "First Day Declaration") filed on the Petition Date and incorporated herein by reference.

## RELIEF REQUESTED

6.      The Debtors, after conducting an interim hearing (the "Interim Hearing") on the Motion, seek the entry pursuant to sections 105, 361, and 363 of the Bankruptcy Code and Rule

4001(b), of an order (a) authorizing the Debtors to use cash collateral, (b) granting adequate protection, and (c) scheduling a final hearing (the "<u>Final Hearing</u>").   In accordance with Bankruptcy Rule 4001, below is a summary of the terms of the Debtors' use of cash collateral:[2]

(a)   <u>Purpose</u>.  The Cash Collateral shall be used to provide for the working capital requirements and other general corporate purposes of the Debtors during the pendency of the Debtors' chapter 11 cases.

(b)   <u>Use of Cash Collateral</u>.  The Cash Collateral will be used by the Debtors solely (a) in accordance with the terms and provisions of the Interim Order and (b) to the extent required to pay, when due, those expenses enumerated in the terms of the agreed-upon budget (which shall be attached to the Interim Order and as may be amended, modified, or supplemented from time to time by additional budgets prepared by the Debtors and approved by the Agent, the "<u>Budget</u>"), including all amounts in the Carveout (as defined in the Interim Order), subject to Permitted Variance (as defined in the Interim Order) during the period commencing immediately following the entry of the Interim Order until the earlier of (i) the date on which the Agent provides, via facsimile or overnight mail, written notice to counsel for the Debtors and counsel for any Committee of the occurrence of the Termination Date based on the occurrence and continuance of an Event of Default (as defined in the Interim Order); (ii) 21 days following entry of the Interim Order if the Final Order is not entered in form and substance satisfactory to the Agent by such date; (iii) the date of the Final Hearing, if the Interim Order is modified in the Final Hearing in a manner unacceptable to the Agent and the Lenders; and (iv) September 28, 2018 or such later date that the Agent may agree in writing. (*See* Interim Order, paragraphs 2 and 5).

(c)   <u>Adequate Protection</u>.  As adequate protection for the Agent's and the Lenders' respective interests in the Prepetition Collateral, the Agent and Lenders shall be granted, pursuant to sections 361(2), 362, 363(c)(2), and 363(e) of the Bankruptcy Code, first priority postpetition security interests and liens, subject only to Permitted Priority Liens (as defined in the Interim Order) (the "<u>Replacement Liens</u>").  The Replacement Liens (1) are and shall be in addition to the Prepetition Liens; (2) are and shall be properly perfected, valid and enforceable liens without any further action by Debtors or Agent and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; and (3) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of these cases. Notwithstanding the foregoing, Debtors are authorized to and shall execute and deliver to the Agent such financing statements, mortgages, instruments and other

---

[2] Terms used but not defined in the summary are otherwise defined in this Motion.  To the extent of any conflict between the summary provided herein and the Interim Order or Final Order, the applicable order shall govern.

documents as the Agent may request from time to time in respect of the Replacement Liens.

The Replacement Liens shall attach to all of the real and personal property of Debtors of any description whatsoever, wherever located and whenever arising or acquired, including all cash, accounts, inventory, equipment, fixtures, chattel paper, general intangibles (excluding claims and proceeds under Code §§ 544, 547, 548, 549, 550 and 553), all leaseholds, all commercial torts, all other "Collateral" (as that term is defined in the Prepetition Credit Agreement), and all proceeds, rents, issues, profits and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any of the foregoing. The Replacement Liens shall be subordinate only to the Permitted Priority Liens.

To the extent Replacement Liens granted in the Interim Order are with respect to Postpetition Collateral that was not subject to Prepetition Liens or with respect to which the Court rules in favor of a plaintiff in any Challenge that is timely and properly filed by a Challenge Party during the Investigation Period, such Replacement Liens shall only secure the payment of the Prepetition Debt in an amount equal to any diminution in the value of the Agent's or Lenders' respective interest in the Prepetition Collateral from and after the Petition Date.

Pursuant to sections 503(b), 507(a) and 507(b) of the Bankruptcy Code, the Agent, for its benefit and the benefit of the Lenders, if and to the extent the adequate protection of the interests of the Agent and the Lenders in the Prepetition Collateral granted pursuant to this Order proves insufficient, the Agent and the Lenders shall have an allowed claim under section 507(b) of the Bankruptcy Code, subject to the Carveout, in the amount of any such insufficiency, with priority over: (1) all costs and expenses of administration of the Cases that are incurred under any provision of the Bankruptcy Code; and (2) the claims of any other party in interest under section 507(b) of the Bankruptcy Code (*See* Interim Order, paragraph 4).

(d)     Termination. After the Termination Date, Agent will be entitled to an expedited hearing before the Court on five (5) business days' notice and, in connection therewith, Agent shall be entitled to seek an order that provides: (1) for Agent and Lenders to have immediate relief from the automatic stay with respect to the Aggregate Collateral (without regard to the passage of time provided for in Fed. R. Bankr. P. 4001(a)(3)), and to be entitled to exercise all rights and remedies available to them under the Prepetition Documents and applicable nonbankruptcy law; and (2) that Debtors shall surrender the Aggregate Collateral and otherwise cooperate with Agent and Lenders in the exercise of their rights and remedies under the Prepetition Documents and applicable nonbankruptcy law, including, without limitation, by filing a motion to retain one or more agents to sell, lease or otherwise dispose of the Aggregate Collateral upon the request and subject to terms and conditions acceptable to Agent. (*See* Interim Order, paragraph 5).

(e)    <u>Carveout</u>.  The liens and claims granted to any of the Agent or Lenders in the Interim Order and/or the Prepetition Documents shall be subject to the payment, without duplication, of the following fees and claims (the "Carveout"): (i) all fees required pursuant to 28 U.S.C. § 1930(a), (ii) with respect to each Carveout Professional, the allowed fees and disbursements as may be awarded to such Carveout Professional from time to time pursuant to Code § 330, in the aggregate amount not to exceed the lesser of (x) the aggregate amount provided in the Budget for such Carveout Professional for the period commencing on the Filing Date and ending on the Termination Date and (y) the aggregate amount of allowed fees and expenses for such Carveout Professional that accrue during the period commencing on the Filing Date and ending on the Termination Date; and (iii) the claims of the Carveout Professionals retained by the Debtors for unpaid fees and expenses which were incurred on and after the Termination Date in an aggregate amount for all Carveout Professionals not to exceed $25,000.  (*See* Interim Order, paragraph 6).

(f)    <u>Stipulations to Liens and Claim</u>. The Debtors make certain stipulations as to the extent, validity, enforceability and priority of the Lenders' liens and claims and have waived claims against such Lenders.  (*See* Interim Order, paragraph D).  The rights of all parties other than the Debtors to challenge the claims and liens of the Lenders or to bring causes of action against such parties is expressly preserved subject to an applicable deadline to assert such a claim.  (*See* Interim Order, paragraph 8).  Subject to the terms of <u>Paragraph 8</u> of the Interim Order: (1) the Prepetition Liens shall constitute Priority Liens (as defined in the Interim Order), subject to the Permitted Priority Liens; (2) the Prepetition Debt constitutes the legal, valid and binding obligation of the Debtors, enforceable in accordance with the terms of the Prepetition Documents (as defined in the Interim Order); (3) no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to avoidance, re-characterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (4) the Prepetition Documents are valid and enforceable in all respects; and (5) the Agent's and the Lenders' claim with respect to the Prepetition Debt shall for all purposes constitute an allowed claim within the meaning of section 506 of the Bankruptcy Code in an amount not less than $153,652,695.61.

(g)    <u>Additional Covenants</u>.  Exhibit C of the Interim Order sets forth certain Additional Covenants that the Debtors must comply with in order to maintain the use of cash collateral.

(h)    <u>No Marshaling and 506(c) Waiver</u>.  Paragraph 13 of the Interim Order provides that neither Agent nor any Lender nor any of the Aggregate Collateral (as defined in the Interim Order) shall be subject to the doctrine of marshaling.  Paragraph 7 of the Interim Order provides for a waiver of rights under 506(c) effective upon entry of the Final Order.

(i)     Additional Waiver.  Pursuant to paragraph 12 of the Interim Order, the Debtors waive their rights:  (a) to return any of the Aggregate Collateral pursuant to Code § 546(h);  (b) to consent to any order permitting any claims pursuant to Code § 503(b)(9); and (c) to consent to setoff pursuant to Code § 553, in each case without the prior written consent of Agent or an order entered by the Court after notice and a hearing

## DEBTORS' PREPETITION DEBT STRUCTURE AND HISTORY

7.      On September 9, 2015, PQ Finance Sub LLC, as borrower prior to the consummation of the Closing Date Merger[3] ("Initial Borrower"), Product Quest Manufacturing, LLC, as borrower after the consummation of the Closing Date Merger ("Current Borrower"), certain lenders (the "Lenders"), Madison Capital Funding LLC, as administrative agent, a joint lead arranger and a joint book runner (the "Agent"), Carlyle GMS Finance, Inc., Carlyle GMS Finance SPV LLC and NF Investment Corp., as joint lead arrangers and joint book runners entered into that certain Credit Agreement (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), pursuant to which, the Lenders agreed to make (a) available a $20,000,000 revolving credit facility (the "Revolving Loan"), and (b) a $120,000,000 term loan (the "Term Loan").  Both the Revolving Loan and the Term Loan mature on September 9, 2020.  The Credit Agreement was subsequently amended by that First Amendment to the Credit Agreement, dated as of September 20, 2017, whereby the Lenders agreed to make available a $25,000,000 super-priority revolving loan with a maturity date of March 31, 2019 (the "Super-Priority Revolving Loan", together with the Revolving Loan and the Term Loan, the "Loans").  The Credit Agreement was further amended by that certain Second Amendment to Credit Agreement, dated as of March 29, 2018, that certain Third Amendment to

---

[3] The "Closing Date Merger" is the merger on the closing date of PQ Finance Sub LLC with and into Product Quest Manufacturing, LLC pursuant to that certain certificate of merger dated as of September 9, 2015, resulting in Product Quest Manufacturing, LLC as the surviving entity and the Current Borrower under the Credit Agreement.

Credit Agreement, dated as of May 4, 2018 and that certain Fourth Amendment to Credit Agreement, dated as of May 31, 2018.

8.    The Credit Agreement is guaranteed by PQ Acquisition Corporation and the Current Borrower's subsidiaries and secured by a lien on substantially all present and future assets PQ Acquisition Corporation, Current Borrower and the Current Borrower's direct and indirect subsidiaries.

9.    The Credit Agreement, the guarantee, and all other loan documents evidence or otherwise relating to the Loans are hereinafter referred to collectively as the "Loan Documents." As of the Petition Date, the outstanding balance under the Loan Documents was not less than $153,652,695.61 (the "Prepetition Debt").

10.    In the aggregate, the Loan Documents provide that the Prepetition Debt is secured by security interests and liens upon substantially all of the assets of the Debtors (the "Prepetition Liens"). The assets of the Debtors that are subject to the liens, security interests, and mortgages of the Agent and the Lenders are hereinafter collectively referred to as the "Prepetition Collateral."

11.    Substantially all of the cash held by or otherwise generated by the Debtors' management of their properties as of the Petition Date constitutes "cash collateral," as such term is defined in section 363(a) of the Bankruptcy Code , and is subject to the interest of the Lenders (the "Cash Collateral").

## THE DEBTORS' PROPOSED USE OF CASH COLLATERAL

12.    Without the use of the Cash Collateral, the Debtors do not have sufficient access to working capital to manage their properties in the ordinary course for a period of time

sufficient to facilitate the wind down of their estates. The Debtors' ability to administer these bankruptcy cases is dependent on their ability to use the Cash Collateral.

13.     The inability of the Debtors to access the Cash Collateral and to make payments on certain obligations on a timely basis may result in, *inter alia*, the Debtors' inability to continue to  maximize the value of their assets.  Without access to the Cash Collateral, the impact on the Debtors' estates would be catastrophic and would result in material harm to all of the Debtors' creditors and other constituents.

14.     Accordingly, the Debtors request this Court to (a) initially approve the use of the Cash Collateral in accordance with the terms of the interim order attached hereto as <u>Exhibit A</u> (the "<u>Interim Order</u>"), and (b) approve the use of the Cash Collateral on a final basis in accordance with the terms of a final order (the "<u>Final Order</u>").

## LEGAL BASES FOR REQUESTED RELIEF

### A.     Cash Collateral

15.     The Debtors seek to use Cash Collateral commencing immediately following the entry of the Interim Order through the Termination Date (as defined in Exhibit A of the Interim Order).  The Cash Collateral will be used by the Debtors to the extent necessary to meet their working capital needs.

16.     Section 363(c)(2) of the Bankruptcy Code provides that a debtor may not use, sell, or lease cash collateral unless: "(a) each entity that has an interest in such cash collateral consents; or (b) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."  11 U.S.C. § 363(c)(2).

17.     Additionally, section 363(e) of the Bankruptcy Code provides that "on request of an entity that has an interest in property . . . proposed to be used, sold, or leased, by the trustee,

the court, with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest."  11 U.S.C. § 363(e).

18.     The Debtors are requesting authority to use the full amount of the Cash Collateral for the purposes and amounts set forth in the Budget, subject to the Permitted Variance (as defined in the Interim Order).  The Agent and the Lenders have consented to the use of the Cash Collateral to the extent required to pay, when due, the expenses set forth in the Budget, subject to the granting of the adequate protection and the other provisions set forth in the Interim Order.

19.     The determination of adequate protection is a fact-specific inquiry to be decided on a case-by-case basis.  *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996).  "Its application is left to the vagaries of each case . . . but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process."  *Id.* (quoting *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986)).   Examples of adequate protection are provided for in section 361 and include, but are not limited to: (i) making a cash payment or periodic cash payments to a secured creditor to the extent that the estate's use of property will result in a decrease in the value of such creditor's interest in the property; (ii) provisions for an additional or replacement lien to the extent that the use of such property will cause a decrease in the value of such entity's interest in the property; and (iii) granting such other relief as will result in the realization by the creditor of the indubitable equivalent of such creditor's interest in the property.  *See In re C.G. Chartier Constr., Inc.*, 126 B.R. 956, 960 (E.D. La. 1991).

20.     In accordance with section 363(e) of the Bankruptcy Code, and consistent with the purposes underlying the provision of adequate protection, the proposed Interim Order provides that adequate protection will be provided to the Agent and the Lenders in connection

9

with the use of the Cash Collateral, as follows: (a) Replacement Liens on all assets of the Debtors' estates and subject to the Permitted Priority Liens; and (b) an administrative expense claim equal to the aggregate diminution in value of the Prepetition Collateral under section 507(b) of the Bankruptcy Code; provided that such claim shall be subject to the Permitted Priority Liens, including the Carveout.

21.     Accordingly, the Debtors request that the Court authorize the Debtors' use of Cash Collateral subject to the Budget and Permitted Variances and the other provisions of the Interim Order.

**B.      Request for Immediate Interim Relief**

22.     Pending the Final Hearing, the Debtors require immediate use of Cash Collateral for, among other things, the management of their properties and other working capital needs.  It is essential that the Debtors maintain the value of their assets and pay for ordinary, post-petition operating expenses, as well as the prepetition expenses approved in the first-day orders.

23.     Absent immediate use of Cash Collateral, the Debtors will be unable to pay ongoing management expenses.  Consequently, the Debtors will unable to manage their properties in the ordinary course for a period of time sufficient to accomplish a successful wind down of the Debtors' businesses.  Accordingly, if interim relief is not obtained, the Debtors' assets will be immediately and irreparably jeopardized, to the detriment of their estates, their creditors and other parties-in-interest.

24.     Accordingly, the Debtors request that, pending the Final Hearing, the Court schedule the Interim Hearing as soon as practicable to consider the Debtors' request for authorization to use Cash Collateral, in accordance with and pursuant to the terms and conditions contained in the Interim Order.

25.    Bankruptcy Rule 4001(b) permits a court to approve a debtor's request for use of cash collateral during the 14-day period following the filing of a motion requesting authorization to use cash collateral, but "only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b)(2).  In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions.

26.    For the foregoing reasons, the Debtors believe that granting the relief requested herein is appropriate and in the best interests of their estates.

## **REQUEST FOR FINAL HEARING**

27.    Pursuant to Bankruptcy Rules 4001(b)(2), the Debtors request that the Court set a date for the Final Hearing that is as soon as practicable, and fix the time and date prior to the Final Hearing for parties to file objections to this Motion.

## **EMERGENCY CONSIDERATION**

28.    The Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." Here, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. Furthermore, the failure to receive the requested relief during the first 21 days of the chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003

and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

## WAIVER OF BANKRUPTCY RULE 4001(a)

29.     The Debtors request a waiver of the stay of the effectiveness of the order approving this motion under Bankruptcy Rule 4001(a)(3). Bankruptcy Rule 4001(a)(3) provides that "[an] order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of fourteen days after entry of the order, unless the court orders otherwise." As set forth herein, the use of Cash Collateral is necessary to allow the Debtors to manage their properties. Furthermore, allowing the Debtors' use of Cash Collateral will prevent irreparable harm to the Debtors' estates. Accordingly, the Debtors submit that ample cause exists to justify the waiver of the fourteen-day stay imposed by Bankruptcy Rule 4001(a)(3).

## NOTICE

30.     Notice of this Motion has been provided to the Office of the United States Bankruptcy Administrator, counsel to the Agent, the Debtors' thirty (30) largest unsecured creditors on a consolidated basis, the Debtors' landlords, the Debtors' depository banks, the Internal Revenue Service, parties that have filed a request for special notice with this Court under Bankruptcy Rule 2002, and all creditors who have recorded a financing statement on the Debtors' personal property or a lien on any of the Debtors' property.  In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court:

(a)     enter the Interim Order substantially in the form attached hereto as Exhibit A; and

(b)     grant the Debtors such other and further relief as is just and proper.

[*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*]

Dated: September 7, 2018

Respectfully submitted,

NORTHEN BLUE LLP

/s/ John A. Northen
John A. Northen
North Carolina State Bar No. 6789
jan@nbfirm.com
Vicki L. Parrott
North Carolina State Bar No. 25449
vlp@nbfirm.com
John Paul H. Cournoyer
North Carolina State Bar No. 42224
jpc@nbfirm.com
1414 Raleigh Road, Suite 435
Chapel Hill, North Carolina  27517
Telephone:  (919) 968-4441

PROPOSED COUNSEL FOR THE
DEBTORS-IN-POSSESSION

**<u>Exhibit A</u>**
**Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**WINSTON-SALEM DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **Product Quest Manufacturing, LLC,** *et al.*,[4] | ) | **Case No. 18-50946** |
| | ) | **(Joint Administration Pending)** |
| | ) | |
| **Debtors.** | ) | |
| | ) | |

**ORDER AUTHORIZING DEBTORS TO:  (A) USE CASH COLLATERAL ON AN**
**EMERGENCY BASIS PENDING A FINAL HEARING; AND (B) GRANT ADEQUATE**
**PROTECTION AND PROVIDE SECURITY AND OTHER RELIEF TO**
**AGENT AND LENDERS**

This matter came before this Court on the motion (the "Motion") of Ei LLC

("EI"), Product Quest Manufacturing, LLC ("PQM"), Scherer Labs International, LLC

("Scherer"),  Product Quest Logistics, LLC ("PQL"), JBTRS, L.L.C. ("JBTRS"), and PQ Real

Estate LLC ("PQ Real Estate", together with EI, PQM, Scherer, PQL, and JBTRS, collectively,

the "Debtors") requesting that this Court enter an order authorizing Debtors to:  (a) use certain

Cash Collateral on an emergency basis pending a Final Hearing; and (b) grant adequate

---

[4] The Debtors in these cases, along with the last four digits of each Debtor's federal tax
identification number, are: (i) Ei LLC (6099); (ii) Product Quest Manufacturing, LLC (4401);
(iii) Scherer Labs International, LLC (5258); (iv) Product Quest Logistics, LLC (6199); (v)
JBTRS, L.L.C. (1249); and (vi) PQ Real Estate LLC (4569).  The Debtors' service address is:
2865 N. Cannon Blvd., Kannapolis, North Carolina 28083.

protection and provide security and other relief to Madison Capital Funding LLC ("MCF"), in its capacity as agent ("Agent") to the lenders party to Prepetition Credit Agreement ("Lenders"). Unless otherwise indicated, all capitalized terms used as defined terms herein have the meanings ascribed thereto in Exhibit A attached hereto and by this reference are made a part hereof.

This Order shall constitute findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 and shall take effect and be fully enforceable as of the Filing Date.

Having examined the Motion, being fully advised of the relevant facts and circumstances surrounding the Motion, and having completed a hearing pursuant to Code § 363 and Fed. R. Bankr. P. 4001(b) and (d), and objections, if any, having been withdrawn, resolved or overruled by the Court, **THE MOTION IS GRANTED, AND THE COURT HEREBY FINDS THAT:**

A.    On the Filing Date, Debtors filed voluntary petitions for relief under chapter 11 of the Code. Debtors have retained possession of their property and continue to manage their properties as debtors in possession pursuant to Code §§ 1107 and 1108.

B.    The Court has jurisdiction over the Cases and this proceeding pursuant to 28 U.S.C. § 1334. Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue over this Motion is proper under 28 U.S.C. § 1409(a).

C.    No Committee has been appointed in these Cases.

D.    Subject to Paragraph 8 of this Order, Debtors admit, stipulate and agree that:

i.    the Prepetition Documents evidence and govern the Prepetition Debt, the Prepetition Liens and the prepetition financing relationship among Debtors, Agent and Lenders;

ii.      the Prepetition Debt constitutes the legal, valid and binding obligation of Debtors, enforceable in accordance with the terms of the Prepetition Documents;

iii.      as of the Filing Date, Debtors are liable for payment of the Prepetition Debt, and the Prepetition Debt shall be an allowed claim in an amount not less than $153,652,695.61;

iv.      no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to contest, objection, recoupment, defense, counterclaim, offset, avoidance, recharacterization, subordination or other claim, cause of action or challenge of any nature under the Code, under applicable non-bankruptcy law or otherwise;

v.      the Prepetition Liens are Priority Liens, subject to Permitted Priority Liens and secure payment of all of the Prepetition Debt;

vi.      upon the entry of this Order, Agent's interests in the Prepetition Collateral will be adequately protected, and for purposes of Code §§ 506(c) and 507(b) and Fed. R. Bankr. P. 3012, as of the Filing Date, the value of the Lenders' interest in the Prepetition Collateral was not less than $29,000,000; provided, however, that nothing herein shall prejudice Agent's and any Lender's right to later:  (1) assert that their respective interests in the Prepetition Collateral lack adequate protection; and (2) seek a higher valuation of the Prepetition Collateral;

vii.      Debtors do not have any claims, counterclaims, causes of action, defenses or setoff rights relating to the Prepetition Documents, the Prepetition Liens, the Prepetition Debt or otherwise, against the Agent, the Lenders and their respective

affiliates, subsidiaries, agents, officers, directors, employees, advisors, consultants, predecessors in interest, successors and assigns.

E.      Agent and Lenders have consented or are deemed to have consented pursuant to the Prepetition Documents to the terms of this Order and are entitled to adequate protection as set forth herein pursuant to Code §§ 361, 362 and 363 for any decrease in the value of such interests in the Prepetition Collateral from and after the Filing Date.

F.      Debtors need to use Cash Collateral as provided herein through the conclusion of the Final Hearing, in order to prevent immediate and irreparable harm to the estate. Entry of this Order will also enhance the possibility of maximizing the value of the Debtors' assets.

G.      The terms of this Order have been negotiated at arm's length and in good faith.

H.      Under the circumstances of these Cases, this Order is a fair and reasonable response to Debtors' request for Agents' and Lenders' consent to the use of Cash Collateral, and the entry of this Order is in the best interest of Debtors' estates and their creditors.

I.      The notice provided by Debtors of the Motion, the hearing on the Motion, and the entry of this Order satisfy the requirements of Fed. R. Bankr. P. 2002, 4001(b) and (d) and 9014 and Code §§ 102(1) and 363 and were otherwise sufficient and appropriate under the circumstances.

**WHEREFORE, IT IS HEREBY ORDERED THAT THE MOTION IS GRANTED, AND THAT:**

i.      <u>Motion Granted</u>.  The Motion is granted on an interim basis in accordance with the terms and conditions of this Order.  Subject to the terms hereof, this Order is valid immediately and is fully effective upon its entry.

ii.    <u>Authorization to Use Cash Collateral</u>.  Debtors are authorized to use Cash Collateral through the Termination Date solely (a) in accordance with the terms and provisions of this Order, and (b) to the extent required to pay, when due, those expenses enumerated in the Budget, including all amounts included in the Carveout (as defined in Paragraph 6 below), subject to the Permitted Variance.

iii.    <u>Procedure for Use of Cash Collateral</u>.

(1)    <u>Delivery of Cash Collateral to Postpetition Agent</u>.  Subject to the Carveout and the Debtors' right to use Cash Collateral prior to the Termination Date in accordance with the terms and conditions set forth in this Order, Debtors shall deposit all Cash Collateral now or hereafter in their possession or control into the Blocked Account promptly upon receipt thereof.

(2)    <u>Cash Collateral in Agents' or Lenders' Possession</u>.  Agent is authorized to collect upon, convert to cash and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into its or any Lender's possession or control which constitute Aggregate Collateral or proceeds thereof.

(3)    <u>Application of Cash Collateral</u>.  Prior to the Termination Date, Agent, at its election, is authorized to apply all Cash Collateral now or hereafter in Agent's or any Lender's possession or control in excess of the amounts set forth in the Budget to the extent then due and payable, to the payment of all Prepetition Debt in accordance with the Prepetition Documents.  All such applications to Prepetition Debt shall be final, subject only to the right of parties in interest to seek a determination in accordance with Paragraph 8 below that such applications to other Prepetition Debt resulted in the payment of any unsecured prepetition claim of Agent and Lenders.

iv.    Adequate Protection of Interests of Prepetition Agent and Prepetition Lenders in the Prepetition Collateral and the Prepetition Liens.  Agent and Lenders have consented (or, pursuant to the Prepetition Documents, are deemed to have consented) to the terms of this Order and are entitled to adequate protection as set forth herein and to the extent required under Code §§ 361, 362 or 363 (including for any decrease in the value of the Agent's and/or Lenders' interests in the Prepetition Collateral from and after the Filing Date).

(1)    Priority of Prepetition Liens/Allowance of Lenders' Claim. Subject to the terms of Paragraph 8 of this Order: (1) the Prepetition Liens shall constitute Priority Liens, subject to the Permitted Priority Liens; (2) the Prepetition Debt constitutes the legal, valid and binding obligation of Debtors, enforceable in accordance with the terms of the Prepetition Documents; (3) no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to avoidance, recharacterization or subordination pursuant to the Code or applicable nonbankruptcy law; (4) the Prepetition Documents are valid and enforceable in all respects; and (5) Agent's and Lenders' claim with respect to the Prepetition Debt shall for all purposes constitute an allowed claim within the meaning of Code § 506 in an amount not less than $153,652,695.61.

(2)    Replacement Liens.  Agent is hereby granted the Replacement Liens, for the benefit of Lenders, as security for payment of the Prepetition Debt.  The Replacement Liens:  (1) are and shall be in addition to the Prepetition Liens; (2) are and shall be properly perfected, valid and enforceable liens without any further action by Debtors or Agent and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; and (3) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Cases.  Notwithstanding the foregoing, Debtors are authorized to and shall execute and deliver to Agent such financing

statements, mortgages, instruments and other documents as Agent may request from time to time in respect of the Replacement Liens. To the extent Replacement Liens granted herein are with respect to Postpetition Collateral that was not subject to Prepetition Liens or with respect to which the Court rules in favor of a plaintiff in any Challenge that is timely and properly filed by a Challenge Party during the Investigation Period, such Replacement Liens shall only secure the payment of the Prepetition Debt in an amount equal to any diminution in the value of the Agent's or Lenders' respective interest in the Prepetition Collateral from and after the Filing Date.

(3)    Allowed Code § 507(b) Claim. If and to the extent the adequate protection of the interests of Agent and Lenders in the Prepetition Collateral granted pursuant to this Order proves insufficient, Agent and Lenders shall have an allowed claim under Code § 507(b), subject to the Carveout, in the amount of any such insufficiency, with priority over: (1) all costs and expenses of administration of the Cases that are incurred under any provision of the Code; and (2) the claims of any other party in interest under Code § 507(b).

(4)    Reaffirmation of Guaranty. Subject to the terms of Paragraph 8 of this Order: (i) the Guaranty and all related security documents shall remain in full force and effect notwithstanding the entry of this Order and any subsequent orders amending this Order or otherwise providing for the use of Cash Collateral consented to by Agent and Lenders pursuant to Code § 363; and (ii) each Guarantor is and shall remain liable for the guaranteed obligations under the Guaranty.

v.    Termination Date; Rights and Remedies.

(1)    Effect of Termination Date. Unless extended by the Court upon the written agreement of Agent or by further Order of the Court after notice and hearing, upon the Termination Date without further notice or order of Court: (1) Debtors' authorization to use Cash Collateral hereunder will automatically terminate; and (2) Debtors shall be prohibited from

using Cash Collateral for any purpose other than application to the Prepetition Debt and payment of amounts allowed under the Carveout; and (3) subject to Paragraph 8 of this Order, Agent shall be entitled to apply any Cash Collateral coming into its possession or control to the Prepetition Debt in accordance with the Prepetition Documents.

(2)     <u>Rights and Remedies</u>.  After the Termination Date, Agent will be entitled to an expedited hearing before the Court on five (5) business days' notice and, in connection therewith, Agent shall be entitled to seek an order that provides:  (1) for Agent and Lenders to have immediate relief from the automatic stay with respect to the Aggregate Collateral (without regard to the passage of time provided for in Fed. R. Bankr. P. 4001(a)(3)), and to be entitled to exercise all rights and remedies available to them under the Prepetition Documents and applicable nonbankruptcy law; and (2) that Debtors shall surrender the Aggregate Collateral and otherwise cooperate with Agent and Lenders in the exercise of their rights and remedies under the Prepetition Documents and applicable nonbankruptcy law, including, without limitation, by filing a motion to retain one or more agents to sell, lease or otherwise dispose of the Aggregate Collateral upon the request and subject to terms and conditions acceptable to Agent.  Notwithstanding the foregoing, Debtors may seek an order of this Court determining that an Event of Default alleged to have given rise to the Termination Date did not occur; <u>provided</u>, <u>however</u>, Agent shall have no obligation to consent to any use of Cash Collateral.

(3)     <u>Access to Collateral</u>.  Subject to entry of the Final Order and Paragraph 5(b), notwithstanding anything to the contrary herein, upon written notice to the landlord of any of Debtors' leased premises that an Event of Default has occurred and is continuing, Agent may enter upon such leased premises for the purpose of exercising any right or remedy with respect to the Aggregate Collateral located thereon and shall be entitled to the

Debtors' rights and privileges under such lease(s) without interference from such landlord; provided that Agent shall pay to such landlord rent first accruing after the above referenced written notice and during the period of occupancy by Agent, calculated on a per diem basis.

      vi.    Carveout.

      (1)    Carveout Terms.    Notwithstanding anything to the contrary contained in this Order or the Prepetition Documents, upon the occurrence of the Termination Date (defined below), the liens and claims granted to any of the Agent or Lenders in this Order and/or the Prepetition Documents shall be subject to the payment, without duplication, of the following fees and claims (the "Carveout"): (i) all fees required pursuant to 28 U.S.C. § 1930(a), (ii) with respect to each Carveout Professional, the allowed fees and disbursements as may be awarded to such Carveout Professional from time to time pursuant to Code § 330, in the aggregate amount not to exceed the lesser of (x) the aggregate amount provided in the Budget for such Carveout Professional for the period commencing on the Filing Date and ending on the Termination Date and (y) the aggregate amount of allowed fees and expenses for such Carveout Professional that accrue during the period commencing on the Filing Date and ending on the Termination Date; and (iii) the claims of the Carveout Professionals retained by the Debtors for unpaid fees and expenses which were incurred on and after the Termination Date in an aggregate amount for all Carveout Professionals not to exceed $25,000.  The Carveout shall, with respect to a Carveout Professional: (1) be reduced dollar-for-dollar by any payments of fees and expenses to such Carveout Professional after the Filing Date; and (2) shall be paid out of any prepetition retainer held by such Carveout Professional or unencumbered property of the estate before such payments are made from proceeds of the Aggregate Collateral.

      (2)    Carveout Usage.    No portion of the Carveout and no Aggregate Collateral may be used to pay any fees or expenses incurred by any entity, including the Debtors,

any Committee or the Carveout Professionals, in connection with claims or causes of action adverse to Agent's or Lenders' interests in the Aggregate Collateral, including (1) preventing, hindering or delaying Agent's or Lenders' enforcement or realization upon any of the Aggregate Collateral once an Event of Default has occurred; (2) using or seeking to use Cash Collateral or incurring indebtedness in violation of the terms hereof, or selling any Aggregate Collateral without Agent's and Lenders' consent; or (3) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of the Prepetition Debt or any mortgages, liens or security interests with respect thereto or any other rights or interests of Agent and Lenders, or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Code, against Agent or Lenders; provided, however, that the foregoing shall not apply to costs and expenses, in an amount not to exceed $25,000, incurred by the Carveout Professionals in connection with the investigation of a potential Challenge in accordance with Paragraph 8 of this Order; provided, further, however, that the Carveout may be used to pay fees and expenses incurred by the Carveout Professionals in connection with the negotiation, preparation and entry of this Order or any amendment hereto consented to by Agent.

(3)     Carveout Procedure.   The Debtors shall periodically, upon the request of the Agent, provide to the Agent a written report (the "Carveout Report"), in which the Debtors disclose their then current estimate of (1) the aggregate amount of unpaid professional fees, costs and expenses accrued or incurred by the Carveout Professionals, through the date of the Carveout Report, and (2) projected fees, costs and expenses of the Carveout Professionals for the 30-day period following the date of such Carveout Report.  Nothing herein shall be construed as consent by Agent and Lenders to the allowance of any fees or expenses of the Carveout Professionals or shall affect the right of Agent or any Lender to object to the allowance and

payment of such fees, costs or expenses, or the right of Agent or any Lender to the return of any portion of the Carveout that is funded with respect to fees and expenses for a Carveout Professional that are approved on an interim basis that are later denied on a final basis.  For the avoidance of doubt, no Carveout Professional shall be entitled to any portion of the Carveout allocated for any other Carveout Professional in the Budget.

vii.    No Surcharge.  Debtors represent that in their business judgment the Budget contains all expenses that are reasonable and necessary for the preservation of the Aggregate Collateral through the period for which the Budget runs, and therefore includes all items potentially chargeable to Agent and Lenders under Code § 506(c).  Only upon and subject to entry of the Final Order, in the exercise of their business judgment, Debtors (or any Trustee) agree that there shall be no surcharge of the Aggregate Collateral for any purpose, unless agreed to by Agent and Lenders.  Therefore, subject to and only effective upon entry of the Final Order, the Debtors (or any Trustee) shall be deemed to have waived any rights, benefits or causes of action under Code § 506(c), the enhancement of collateral provisions of Code § 552, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) as they may relate to or be asserted against the Agent, the Lenders or the Aggregate Collateral.

viii.    Reservation of Rights; Bar of Challenges and Claims.  The stipulations and representations contained in this Order, including, without limitation, in Paragraphs D, shall be binding on all Challenge Parties, unless and solely to the extent that (i) a Challenge is timely and properly filed  by a Challenge Party during the Investigation Period and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed Challenge.

(1)    Challenge Procedure.  During the Investigation Period, a Challenge Party shall be entitled to determine whether a basis to assert a Challenge exists.  If a Challenge Party identifies a basis to assert a Challenge, it must notify the Debtors during the Investigation

Period of its demand that the Debtors initiate an action or adversary proceeding relating thereto and from the date that the Debtors are so notified, the Debtors shall have five (5) business days to notify the Challenge Party of whether the Debtors intend to initiate such action and ten (10) business days to initiate such action.  If the Debtors notify such Challenge Party that the Debtors do not intend to initiate an action or adversary proceeding, the Challenge Party shall have ten (10) business days from the receipt of such notice to seek standing to initiate an action or adversary proceeding.  Nothing herein shall be deemed to grant standing in favor of any Challenge Party absent further order of this Court.  The Debtors, if timely notified of a potential Challenge, shall retain authority to prosecute, settle or compromise such Challenge in the exercise of their business judgment and subject to any applicable further order of court.

(2)     <u>Bar of Challenges and Claims</u>.  If the Debtors do not receive notice of a potential Challenge during the Investigation Period (or such later date as agreed in writing by Agent and Lenders, solely with respect to a potential Challenge against such party, or for cause shown by an order of this Court), without further order of the Court, (1) the claims, liens and security interests of the Agent and the Lenders shall be deemed to be allowed for all purposes in these Cases and shall not be subject to challenge by any party in interest as to extent, validity, priority or otherwise, and (2) the Debtors and their estates shall be deemed to have waived, released and discharged Agent, Lenders and their respective officers, directors, principals, attorneys, consultants, predecessors in interest, and successors and assigns of and from any and all claims and causes of action, indebtedness, and obligations, of every type, which occurred on or prior to the date of entry of this Order with respect to or in connection with the Prepetition Debt, the Prepetition Liens, the Prepetition Documents or otherwise.

ix.     <u>Right to Credit Bid</u>.  Subject to Paragraph 8, in connection with the sale or other disposition of all or any portion of the Aggregate Collateral, whether under Code § 363,

Code § 1129 or otherwise, pursuant to Code § 363(k), Agent shall have the right to use the Prepetition Debt or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Aggregate Collateral.

x.   <u>Additional Covenants</u>.   Debtors shall comply with each Additional Covenant.  Failure to comply with any Additional Covenant shall constitute and immediate Event of Default.

xi.   <u>Application of Sale Proceeds</u>.   Subject to Paragraph 8, the Carveout and the Debtors' right to use Cash Collateral prior to the Termination Date in accordance with the terms and conditions set forth in this Order, all proceeds from sales or other dispositions of all or any portion of the Aggregate Collateral other than in the ordinary course shall be remitted to Agent for application in accordance with Paragraph 3(c) of this Order.

xii.   <u>Waiver of Right to Return/Consent to Setoff</u>.   Debtors hereby waive their rights:  (a) to return any of the Aggregate Collateral pursuant to Code § 546(h); (b) to consent to any order permitting any claims pursuant to Code § 503(b)(9); and (c) to consent to setoff pursuant to Code § 553, in each case without the prior written consent of Agent or an order entered by the Court after notice and a hearing.

xiii.   <u>No Marshaling; No Abandonment</u>.   Neither Agent nor any Lender nor any of the Aggregate Collateral shall be subject to the doctrine of marshaling.  Without the prior written consent of Agent or an order entered by the Court after notice and a hearing, no Debtor may not abandon any Aggregate Collateral to the extent the aggregate value of all abandoned Aggregate Collateral would exceed $20,000.

xiv.   <u>Force and Effect of Prepetition Documents</u>.   Except as modified herein and subject to the other provisions of this Order and the Code, the Prepetition Documents shall remain in full force and effect with respect to the Prepetition Debt.  To the extent there exists any

conflict among the terms of the Motion, the Prepetition Documents and this Order, this Order shall govern and control.

xv.    <u>Modification of Stay</u>.   The automatic stay of Code § 362 is hereby modified with respect to Agent and Lenders to the extent necessary to effectuate the provisions of this Order, including, after the Termination Date, to permit Agent and Lenders to exercise their respective rights subject to and in accordance with Paragraph 5 above.

xvi.    <u>No Waiver</u>.  Agent and Lenders shall not be deemed to have suspended or waived any of their rights or remedies under this Order, the Prepetition Documents, or applicable nonbankruptcy law unless such suspension or waiver is in writing, signed by a duly authorized officer of Agent or the Lenders, as applicable, and directed to Debtors.  No failure of Agent or Lenders to require strict performance by Debtors (or by any Trustee) of any provision of this Order shall waive, affect or diminish any right of Agent or Lenders thereafter to demand strict compliance and performance therewith, and no delay on the part of Agent or Lenders in the exercise of any right or remedy under this Order, the Prepetition Documents or applicable nonbankruptcy law shall preclude the exercise of any right or remedy.  Further, this Order shall not constitute a waiver by Agent or the Lenders of any of their rights under the Prepetition Documents, the Code or applicable nonbankruptcy law, including, without limitation their right to later assert: (1) that, any of their interests in the Aggregate Collateral lack adequate protection within the meaning of Code §§ 362(d) or 363(e) or any other provision thereof; or (2) a claim under Code § 507(b).

xvii.    "<u>Responsible Person</u>."   By taking any actions pursuant to this Order, Agent and Lenders shall not: (a) be deemed to be in control of the operations or liquidation of Debtors; or (b) be deemed to be acting as a "responsible person" with respect to the operation,

management or liquidation of Debtors.  The foregoing provision of this Paragraph 17 shall not be effective until entry of the Final Order.

        xviii.   <u>Amendments</u>.   Debtors, Agent and the Lenders required under the Prepetition Credit Agreement and the Agreement Among Lenders (as defined in the Prepetition Credit Agreement) may enter into amendments or modifications of the Prepetition Documents or the Budget without further notice and hearing or order of this Court; <u>provided</u>, that (a) such modifications or amendments do not materially and adversely affect the rights of any creditor or other party-in-interest and (b) notice of any such amendment or modification is filed with this Court.

        xix.   <u>Proof of Claim</u>.   Notwithstanding any subsequent order of Court concerning proof of claim filing requirements, Agent is authorized (but not obligated) to file a single master proof of claim in Case No. 18-50946 on behalf of itself and the Lenders on account of their claims arising under the Prepetition Documents and hereunder and such master proof of claim shall be deemed filed as a claim against each of the Debtors.

        xx.   <u>Binding Effect</u>.  Except as provided in Paragraph 8 herein, this Order shall be binding on all parties in interest in the Cases and their respective successors and assigns, including any Trustee, except that any Trustee shall have the right to terminate this Order after notice and a hearing.  If this Order does not become a final nonappealable order, if the Debtors or a Trustee terminates this Order, or if any of the provisions of the Order are hereafter modified, amended, vacated or stayed by subsequent order of this Court or any other court, such termination or subsequent order shall not affect: (a) subject to Paragraph 8 of this Order, the stipulations, representations, and findings contained in this Order and the relief granted by and the releases contained in this Order; and (b) the priority, validity, enforceability or effectiveness of any lien, security interest or other benefit or claim authorized hereby with respect to Cash

Collateral used prior to the effective date of such termination or subsequent order.  All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Order, and Agent and Lenders shall be entitled to all the rights, remedies, privileges and benefits granted hereto, including the liens and priorities granted herein.  Except as otherwise explicitly set forth in this Order, no third party is intended to be, or shall be deemed to be, a third party beneficiary of this Order.

      xxi.   <u>Survival</u>.  The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with, any order which may be entered in the Cases: (a) confirming any chapter 11 plan, (b) converting any Case to a case under chapter 7 of the Code, (c) dismissing any Case, (d) withdrawing of the reference of any Case from this Court, or (e) providing for abstention from handling or retaining of jurisdiction of any of the Cases in this Court.  The terms and provisions of this Order shall continue in full force and effect until all of the Prepetition Debt is indefeasibly paid in full in cash and discharged.

      xxii.   <u>Notice of Hearing</u>.  A further hearing (which may be a Final Hearing) is scheduled for [_____], 2018, and may be continued from time to time without further notice other than that given in open court.  Debtors are directed to immediately serve a copy of this Order and the proposed Final Order by first class mail, postage prepaid, on counsel for Agent, Debtors' other secured creditors, Debtors' twenty (20) largest unsecured creditors, and the Bankruptcy Administrator, which service shall constitute adequate and proper notice of the subsequent Hearing.  Any objection to the Order must be filed with the Court and received by counsel for the Debtors, the Agents, and the Bankruptcy Administrator no later than seventy-two (72) hours prior to the commencement of the subsequent Hearing.  Any timely and properly filed and served objection will be heard at the subsequent Hearing.

## EXHIBIT A

## DEFINED TERMS

1.    ***Additional Covenant***.  Any covenant set forth on <u>Exhibit C</u> attached to this Order.

2.    ***Aggregate Collateral***.  Collectively, the Prepetition Collateral and the Postpetition Collateral.

3.    ***Allowable 506(b) Amounts***.  To the extent allowable under Code § 506(b), all interest, fees, costs, expenses, and other charges due or coming due under the Prepetition Documents or in connection with the Prepetition Debt (regardless of whether such fees, costs, interest and other charges are included in the Budget), and all costs and expenses at any time incurred by Agent and Lenders in connection with: (a) the negotiation, preparation and submission of this Order and any other order or document related hereto, and (b) the representation of Agents and Lenders in the Cases, including in defending any Challenge.

4.    ***Blocked Account***.  Account No. 487004335747 at Bank of America, N.A.

5.    ***Borrower***.  Product Quest Manufacturing, LLC, a Florida limited liability company.

6.    ***Budget***.  The budget attached to this Order as <u>Exhibit B</u>, as amended, modified or supplemented from time to time, as may be agreed to by Agent.

7.    ***Carveout Professionals.***  King & Spalding LLP, Northen Blue LLP, Conway MacKenzie, Inc., Kurtzman Carson Consultants LLC, the professionals authorized by the Court to be retained by the Committee, and the United States Trustee.

8.    ***Cases***.  The chapter 11 cases or any superseding chapter 7 cases of the Debtors.

9.    ***Cash Collateral***.  All "cash collateral," as that term is defined in Code § 363(a), in which Agent (on behalf of Lenders) has an interest, all deposits subject to setoff rights in favor of Agent and Lenders, and all cash arising from the collection or other conversion to cash of the Aggregate Collateral, including from the sale of inventory and the collection of accounts receivable.

10.    ***Challenge***.  A claim or cause of action challenging the extent, validity, perfection, priority or enforceability of the Prepetition Debt, the Prepetition Liens or any other claims or causes of action against Agent and Lenders, which Debtors, the Committee, or another party-in-interest may bring, in accordance with Paragraph 8 of this Order.

11.    ***Challenge Party***.  The Debtors, the Committee, any Trustee, or other party-in-interest with the requisite standing.

12.    ***Code***.  The United States Bankruptcy Code (11 U.S.C. § 101 *et seq*.), as amended, and any successor statute.  Unless otherwise indicated, all statutory section references in this Order are to the Code.

13. **Committee**.  Any official creditors' committee appointed to represent unsecured creditors in these Cases pursuant to Code § 1102.

14. **Court**.  The United States Bankruptcy Court for the Middle District of North Carolina.

15. **Event of Default**.  Any of the following: (a) the occurrence and continuance of any of the following Events of Default first arising after the Filing Date under the Prepetition Credit Agreement: (i) an Event of Default under Section 8.1.4 of the Prepetition Credit Agreement as a result of Debtors failure to comply with the provisions of Section 6.1.10, 6.2, 6.3, 6.7, 6.8, 6.12 or 7.8 of the Prepetition Credit Agreement, (ii) an Event of Default under Section 8.1.8 of the Prepetition Credit Agreement or (iii) an Event of Default under Section 8.1.10 of the Prepetition Credit Agreement; (b) Debtors' failure to comply with any of its covenants or obligations under and in strict accordance with the terms of this Order; (c) any Debtor or any other person or entity, without the consent of Agent, seeks the use of Cash Collateral other than in accordance with the terms of this Order, seeks to conduct a Code § 363 sale on terms unacceptable to Agent (including the approval of any bid procedures), or files a chapter 11 plan that is not acceptable to Agent; (d) any Debtor, without the consent of Agent, files a motion to incur debt under Code § 364; (e) entry of any order authorizing any party in interest to reclaim any of the Aggregate Collateral, granting any party in interest relief from the automatic stay with respect to the Aggregate Collateral, or requiring that Debtors turnover any of the Aggregate Collateral, in each case prior to full, final and indefeasible repayment of all Prepetition Debt if such order would cause the aggregate value of all Aggregate Collateral subject to reclamation, stay relief or turnover to exceed $200,000; (f) any material representation or warranty made by Debtors in any certificate, report or financial statement delivered to Agent after the Filing Date is discovered or disclosed to Agent to have been false or misleading in any material respect as of the time when made or given (including by omission of material information necessary to make such representation, warranty or statement not misleading); (g) any Case is dismissed or converted to a case under chapter 7 of the Code or a motion is filed seeking such dismissal or conversion; (h) a Trustee is appointed or elected in any Case, or an examiner with the power to operate Debtors' businesses is appointed in any Case; (i) commencement of an adversary proceeding or contested matter objecting to or challenging the extent, validity, perfection, enforceability or priority of the Prepetition Debt, Prepetition Documents, the Prepetition Liens and/or any liens or claims granted to Agent or Lenders under this Order; (j) this Order, or any other order of this Court, is modified, amended, vacated or stayed in any manner not consented to in writing by Agent; (k) the filing by any of the Debtors of any motion, supplement, amendment, document or other pleading relating to this Order or any of the Prepetition Documents that is not acceptable to Agent; (l) entry of an order terminating or shortening any Debtor's exclusive period to file and solicit acceptances for its plan; (m) any Debtor seeks to surcharge the Prepetition Collateral (or Agent, any Lender or any of the Aggregate Collateral are surcharged) pursuant to Code §§ 105, 506(c), 552 or any other section of the Code; (n) any liens or claims granted in favor of Agent or Lenders under this Order cease to be valid; (o) entry of an order permitting any administrative expense, claim or lien to have priority equal or superior to the priority of Agent and Lenders in respect of the Obligations (other than the Permitted Priority Liens) to the extent Agent has not consented thereto; (p) the payment of or granting of any adequate protection with respect to any indebtedness that was existing prior to the Filing Date (other than as provided herein or as approved by Agent) or (q) without Agent's prior written consent, the Debtors abandon (or file a motion seeking to abandon) any Aggregate

Collateral if such abandonment would cause the aggregate amount of all abandoned Aggregate Collateral to exceed $20,000.

16.      *Filing Date*. September 7, 2018.

17.      *Final Hearing*.  The final hearing on the Motion conducted in accordance with Fed. R. Bankr. P. 4001.

18.      *Final Order*.  A final order authorizing Debtors to use Cash Collateral entered at or in connection with the Final Hearing.

19.      *Guarantors*.  Ei LLC, a North Carolina limited liability company, JBTRS, L.L.C., a Florida limited liability company, Scherer Labs International, LLC, a Florida limited liability company, Product Quest Logistics, LLC, a Florida limited liability company, and PQ Real Estate LLC, a Delaware limited liability company.

20.      *Guaranty*.  That certain Guarantee and Collateral Agreement dated as of September 9, 2015, by and among Borrower, Guarantors and Agent, as amended, modified and supplemented from time to time.

21.      *Investigation Period*.  The period from the Filing Date until the date that is the earlier of (1) seventy-five (75) days after the Filing Date, and (2) sixty (60) days after the date that a Committee is formed.  If, prior to the expiration of the Investigation Period described in the immediately preceding sentence, the Cases are converted to cases under chapter 7 of the Code or a Trustee is appointed in the Cases, the Investigation Period shall be extended for a period of thirty (30) days for the Trustee after the entry of a conversion order or Trustee after the date of its appointment.

22.      *Obligations*.  The "Obligations", as that term is defined in the Postpetition Credit Agreement.

23.      *Permitted Priority Liens*.  Collectively, (a) the Carveout, and (b) liens in favor of third parties upon the Prepetition Collateral, which third-party liens, as of the Filing Date: (1) had priority under applicable law over the Prepetition Liens, (2) were not subordinated by agreement or applicable law, (3) were non-avoidable, valid, properly perfected and enforceable as of the Filing Date and (4) constituted "Permitted Liens" (as defined in the Prepetition Credit Agreement).

24.      *Permitted Variance*.  With respect to any line item in the Budget, deviations in the Debtors' actual performance for the applicable period from the projected performance in the Budget for such period, to the extent such deviations are not prohibited by the Additional Covenants.

25.      *Postpetition Collateral*.  All of the real and personal property of Debtors of any description whatsoever, wherever located and whenever arising or acquired, including all cash, accounts, inventory, equipment, fixtures, chattel paper, general intangibles (excluding claims and proceeds under Code §§ 544, 547, 548, 549, 550 and 553), all leaseholds, all commercial torts, all other "Collateral" (as that term is defined in the Prepetition Credit

Agreement), and all proceeds, rents, issues, profits and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any of the foregoing.

26.    ***Prepetition Collateral***.  All of the "Collateral" (as that term is defined in the Guaranty existing as of the Filing Date), and all proceeds, rents, issues, profits and products thereof.

27.    ***Prepetition Credit Agreement***. That certain Credit Agreement dated as of September 9, 2015 by and among Borrower, Agent and Lenders party thereto, as amended, modified and supplemented from time to time.

28.    ***Prepetition Debt***.  (a) All indebtedness or obligations under the Prepetition Documents as of the Filing Date, including all "Obligations" (as defined in the Prepetition Credit Agreement), and all fees, costs, interest, and expenses as and when due and payable pursuant to the Prepetition Documents, <u>plus</u> (b) all Allowable 506(b) Amounts.

29.    ***Prepetition Documents***.  The Prepetition Credit Agreement, the "Loan Documents" (as that term is defined in the Prepetition Credit Agreement) and the "Agreement Among Lenders" (as that term is defined in the Prepetition Credit Agreement).

30.    ***Prepetition Liens***.  Agent's (on behalf of Lenders) asserted security interests in the Prepetition Collateral under the Prepetition Documents, subject only to Permitted Priority Liens.

31.    ***Priority Liens***.  Liens which are first priority, properly perfected, valid and enforceable security interests, which are not subject to any claims, counterclaims, defenses, setoff, recoupment or deduction, and which are otherwise unavoidable and not subject to recharacterization or subordination pursuant to any provision of the Code, any agreement, or applicable nonbankruptcy law.

32.    ***Replacement Liens***.  Priority Liens in the Postpetition Collateral granted to Agent (for the benefit of the Lenders) pursuant to this Order, subject only to the Permitted Priority Liens.

33.    ***Termination Date***.  The earliest to occur of:  (a) the date on which Agent provides, via facsimile or overnight mail, written notice to counsel for Debtors and counsel for any Committee of the occurrence the Termination Date based on the occurrence and continuance of an Event of Default; (b) the date that is 21 days following the entry of this Order if the Final Order is not entered in form and substance satisfactory to Agent by such date; (c) the date of the Final Hearing, if this Order is modified at the Final Hearing in a manner unacceptable to Agent and Lenders and (d) September 28, 2018 or such later date as Agent may agree in writing.

34.    ***Trustee***.  Any trustee appointed or elected in the Cases.

35.    ***Variance Report***.  A detailed weekly variance report, in form and substance satisfactory to Agent, prepared by Conway MacKenzie, Inc., provided to Agent at the times required by the Additional Covenants, that (i) reconciles Debtors' actual performance for the period commencing on the Filing Date and ending on Friday of the immediately preceding week with Debtors' projected performance under the Budget for such period, which report shall

include, without limitation, a detailed calculation of the variances between Loan Parties' actual and projected disbursements and collections (on a line item basis), and (ii) includes a report from Conway MacKenzie, Inc. setting forth detailed explanations for variances in actual results as compared to forecasted performance for such period under the Budget.

**EXHIBIT B**

**BUDGET**

**[attached]**

## EXHIBIT C

### ADDITIONAL COVENANTS

I.    Measured as of September 14, 2018 and Friday of each week thereafter (each such date, a "Measurement Date"), Debtors shall not:

    A.    permit the aggregate amount of the actual disbursements of the type set forth in any line item in the Budget under the categories "Operating Disbursements" and "Non-Operating Disbursements" (including any line item under the subcategory "Professional Fees" for any specified professional) for the period commencing on the Filing Date and ending on the applicable Measurement Date to exceed one hundred ten percent (110%) of the budgeted amount set forth in such line item in the Budget under the categories "Operating Disbursements" and "Non-Operating Disbursements" for such period; or

    B.    permit the aggregate amount of the actual collections of the type set forth in any line item in the Budget under the category "Collections" for the period commencing on the Filing Date and ending on the applicable Measurement Date to be less than ninety percent (90%) of the budgeted amount set forth in such line item in the Budget under the category "Collections" for such period.

II.    On or before 5:00 p.m. (Eastern Standard Time) on September 18, 2018 and 5:00 p.m. (Eastern Standard Time) on each Tuesday thereafter, Debtors shall deliver to Agent a Variance Report with respect to period ending on the immediately preceding Friday.

III.    On or before September 14, 2018, and subject only to approval by the Court, Debtors shall engage a nationally recognized liquidation firm acceptable to Agent (the "Liquidator") pursuant to the terms of an engagement agreement reasonably acceptable to Agent and which shall in all events, include and provide for, without limitation, a scope of powers and responsibilities acceptable to Agent.  From and after such engagement, Debtors will (a) authorize and instruct the Liquidator to (i) share with the Agent, among other information, all budgets, records, projections, financial information, reports and other information relating to the Collateral, the financial condition, operations, valuations, prospects and valuation of Debtors, as requested by Agent from time to time and (ii) make itself available to Agent as requested by Agent from time to time and (b) all times fully cooperate with the Liquidator and provide the Liquidator complete access at all times to all documentation, books and records, places of business and premises, officers, directors, consultants, employees, advisors and other agents of Debtors.

IV.    On or before September 24, 2018, Debtors shall deliver to Agent either (x) at least one executed agreement from one or more existing key customers of the Debtors relating to the ongoing production and conversion of inventory at 2865 N. Cannon Blvd., Kannapolis, North Carolina 28083, in form and substance satisfactory to Agent (including, without limitation, as to payments, timing and duration) or (y) at least one executed agreement from one or more prospective purchasers for the purchase of assets relating to manufacturing at 2865 N. Cannon Blvd., Kannapolis, North Carolina 28083, in form and substance satisfactory to Agent

(including without limitation, as to the assets subject to the sale, the purchase price, any closing conditions and closing timing).

V.      On or before September 25, 2018, Debtors shall deliver to Agent a report detailing all saleable inventory (including with limitation SKU number, SKU count, SKU description, and category of such inventory (e.g. raw material, packaging, WIP, finished goods, etc.)) and the current location of such inventory.